Mark N. Todzo (Bar No. 168389)
Eric S. Somers (Bar No. 139050)
**LEXINGTON LAW GROUP**
503 Divisadero Street
San Francisco, CA 94117
Telephone: 415-913-7800
mtodzo@lexlawgroup.com
esomers@lexlawgroup.com

Christian Levis (*pro hac vice* forthcoming)
Amanda Fiorilla (*pro hac vice* forthcoming)
Rachel Kesten (*pro hac vice* forthcoming)
**LOWEY DANNENBERG, P.C.**
44 South Broadway, Suite 1100
White Plains, NY 10601
Telephone: (914) 997-0500
Facsimile: (914) 997-0035
clevis@lowey.com
afiorilla@lowey.com
rkesten@lowey.com

*Attorneys for Plaintiff and the Proposed Class*

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| RYAN SEGAL, individually and on behalf of all others similarly situated, <br><br>　　　　　Plaintiff, <br><br> v. <br><br> GOOGLE, LLC, <br><br>　　　　　Defendants. | Case No.: _____ <br><br><br> **CLASS ACTION COMPLAINT** <br><br> **JURY TRIAL DEMANDED** |

Plaintiff Ryan Segal ("Plaintiff") brings this Class Action Complaint against Defendant Google LLC ("Google") based upon personal knowledge, where applicable, information and belief, and the investigation of counsel.

### SUMMARY OF ALLEGATIONS

1.　　　　Plaintiff brings this Class Action Complaint on behalf of customers harmed as a

result of Google's surreptitious collection, use, and storage of Plaintiff's and the proposed Class's highly sensitive biometric data.

2.    Google is one of the most valuable publicly traded companies in the world with a market capitalization of over $1.3 trillion dollars.[1] Google fancies itself a "tech" company, but Google, at its core, is a data and advertising company. Google's numerous products and services provide it the requisite data needed to sustain its valuable advertising businesses and other business segments.

3.    One of these services is Google Assistant. Google Assistant is an artificial intelligence-based virtual assistant developed by Google that allows individuals to use their voice to ask questions or perform certain commands or tasks. Google Assistant is enabled when users say the "wake word," i.e., ("Hey Google" or "OK Google").

4.    Google Assistant comes pre-installed on Android devices, smart speakers, Google Home products, smart displays, laptops, tablets, cars, and more (collectively "Google Assistant Enabled Devices."). Each Google Assistant Enabled Device is linked to a users' Google account and tied to their profile.

5.    Unbeknownst to users, Google, through Google Assistant, surreptitiously collects, uses, and stores voiceprints of each individual who speaks to a Google Assistant Enabled Device. Google does not disclose its biometric data collection to its users, nor does it ask users to acknowledge, let alone consent to, these practices.

6.    Through these practices, Google not only disregards the users' privacy rights; it also violates the Illinois Biometric Information Privacy Act, 740 ILCS 14/1, *et seq.* ("BIPA"), which was specifically designed to protect Illinois residents from practices like Google's. In particular, Google violated (and continues to violate) BIPA because it does not:

   a. Properly inform Plaintiff or the Class in writing that their biometric identifiers (voiceprints) were being generated, collected, stored and used;

---

[1] *Alphabet Inc. (GOOG)*, Yahoo! Finance, https://finance.yahoo.com/quote/GOOG/ (last visited Oct. 21, 2022).

b.  Properly inform Plaintiff or the Class in writing of the specific purpose and length of time for which their biometric identifiers were being collected, stored, and used;

c.  Provide and follow a publicly available retention schedule and guidelines for permanently destroying the biometric identifiers of Plaintiff and the Class; and

d.  Receive a written release from Plaintiff or the Class to collect, capture, or otherwise obtain their biometric identifiers.

7.      Google's misconduct also was deceptive, unjust, and unlawful in that it deceived Plaintiff and Class Members into providing valuable biometric information, which Google used for its own benefit, without consent or compensation, in violation of California law.

8.      Given Google's ongoing deception on concealment of this practice, Plaintiff believes additional information supporting his claim will be revealed after a reasonable opportunity for discovery.

## **PARTIES**

9.      **Plaintiff Ryan Segal** is a natural person and a citizen of Chicago, Illinois.

10.     Plaintiff Segal has owned a Samsung Galaxy S21 Ultra phone equipped with Google Assistant since approximately September 2021.

11.     Plaintiff Segal has on dozens of occasions communicated with Google Assistant, including through the Android Auto app. Plaintiff Segal enabled Google's "Voice Match" feature, which Google claims allows Google Assistant to recognize his voice.

12.     When Plaintiff Segal used Google Assistant, Google processed and analyzed Plaintiff's voice and created a voiceprint on its servers. It then stored this voiceprint on Plaintiff Segal's device.

13.     Each time Plaintiff Segal interacted with Google Assistant, Google transmitted Plaintiff Segal's voiceprint from his device to Google servers.

14.     Google did not obtain a written release from Plaintiff before capturing, collecting, or otherwise obtaining his biometric identifiers or biometric information in compliance with 740 ILCS 14/15(b)(3).

15.     Plaintiff's voiceprints are "biometric identifiers" pursuant to 740 ILCS 14/10.

16.     Transcripts of Plaintiff's voice recordings, which are derived from biometric

3

identifiers, are also "biometric information" pursuant to 740 ILCS 14/10.

17.     Any other data in Google's possession that links Plaintiff's voiceprints to Plaintiff also constitutes "biometric information" pursuant to 740 ILCS 14/10.

18.     As set forth herein, Google obtained the biometric identifiers and/or biometric information of Plaintiff and the Class in violation of BIPA.

19.     **Defendant Google LLC** ("Google") is a limited liability company existing under the laws of the State of Delaware, with its principal place of business located at 1600 Amphitheatre Parkway, Mountain View, California 94043.

## JURISDICTION AND VENUE

20.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C § 1332(d), because the amount in controversy for the Class exceeds $5,000,000 exclusive of interest and costs, there are more than 100 putative members of the Classes defined below, and a significant portion of putative Class members are citizens of a state different from at least one Defendant.

21.     This Court also has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a) because the amount in controversy in this case exceeds $75,000 and this action is between citizens of different states. Plaintiff is a resident of Illinois, whereas Defendant is a Delaware corporation with its principal places of business in California.

22.     This Court has personal jurisdiction over Google because its principal place of business is in California. Additionally, Google is subject to specific personal jurisdiction in this State because a substantial part of the events and conduct giving rise to Plaintiff's claims occurred in this State. Moreover, Google's Terms of Service provide that: "California law will govern all disputes arising out of or relating to these terms, service specific additional terms, or any related services, regardless of conflict of laws rules. These disputes will be resolved exclusively in the federal or state courts of Santa Clara County, California, USA, and you and Google consent to personal jurisdiction in those courts."

23.     Venue is proper in this District pursuant to 28 U.S.C. §1391(b), (c), and (d) because

a substantial portion of the conduct described in this Class Action Complaint was carried out in this District. Furthermore, Defendant is headquartered in this District and subject to personal jurisdiction in this District.

24.     **Divisional Assignment:** This action arises in Santa Clara County, in that a substantial part of the events which give rise to the claims asserted herein occurred in Santa Clara County. Pursuant to L.R. 3-2(e), all civil actions that arise in Santa Clara County shall be assigned to the San Jose Division.

## BIOMETRIC DATA & BIOMETRIC IDENTIFIERS

25.     The proliferation of behavioral economics and marketing science have caused a significant expansion in the use of biometric data.

26.     Biometric data is unique physical characteristics such as retina or iris scans, fingerprints, voiceprints, or hand and face geometry scans as well as the information based on or derived from it.

27.     Biometric data is one of the most sensitive forms of personal information because biometric data cannot be changed once the data is stolen or compromised. Once a person's unique and permanent biometric identifiers are exposed, the victim is left with no recourse to prevent identity theft and/or unauthorized tracking.

28.     Accordingly, the use of biometric data raises a host of privacy concerns and risks associated with misuse or theft. The largest-ever-conducted study on the subject matter by the University of Texas titled *Consumer Attitudes About Biometric Authentication*,[2] showed that 86% of consumers were concerned about the misuse of their personal information and fewer than 10% of consumers felt comfortable giving up their biometrics for online shopping, internet games, or accessing online school records.

29.     That same study revealed "invasion of personal privacy" is the chief reason for

---

[2] Rachel L. German, et al., *Consumer Attitudes About Biometric Authentication*, UNIVERSITY OF TEXAS AT AUSTIN CENTER FOR IDENTITY (May 2018), https://identity.utexas.edu/sites/default/files/2020-09/Consumer%20Attitudes%20About%20Biometrics.pdf.

consumers' discomfort in sharing their biometric data. Similarly, a recent survey of 1,000 individuals published by digital identity firm Entrust titled *State of Consumer Data Privacy Survey*,[3] found 79% of respondents were concerned about their privacy, a fear mainly driven by the risk of attacks and security breaches.

30.     Regulators express the same concerns. Given the clear potential for misuse, the Federal Trade Commission ("FTC") urged companies  collecting biometric data to ask for clear consent before scanning and extracting biometric data from their digital photographs.

31.     Despite these efforts, there has been a significant exploitation of biometric data. Abuses of biometric data that harm the public welfare led to the enactment of the Illinois Biometric Information Privacy Act.

## THE ILLINOIS BIOMETRIC INFORMATION PRIVACY ACT

32.     BIPA was enacted in 2008 following the growing use of biometric data in business and security screening sectors. BIPA was specifically designed to protect members of the public by regulating the collection, use, safeguarding, handling, storage, retention, and destruction of biometric identifiers and information.

33.     Under BIPA, companies may not collect, capture, purchase, receive through trade, or otherwise obtain a person's or a customer's biometric identifier unless it first:

a.     informs the subject . . . in writing that a biometric identifier . . .is being collected or stored;

b.     informs the subject . . . in writing of the specific purpose and length of term for which a biometric identifier . . . is being collected, stored, and used; and

c.     received a written release executed by the subject of the biometric identifier.

740 ILCS 14/15(b).

34.     The statute defines "biometric identifier" to include "a retina or iris scan, fingerprint, voiceprint, or scan of hand or face geometry."  740 ILCS 14/10.

---

[3] Alessandro Mascellino, *Consumers' Contrasting Opinions Towards Biometric Adoption Shown By Entrust Report*, BIOMETRIC UPDATE (Feb. 1, 2021), https://www.biometricupdate.com/202102/consumers-contrasting-opinions-towards-biometric-adoption-shown-by-entrust-report.

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL
CASE NO. _____

35.     The statute defines "biometric information" as "any information, regardless of how it is captured, converted, stored, or shared, based on an individual's biometric identifier used to identify an individual."  740 ILCS 14/10.

36.     BIPA also regulates how companies must handle Illinois consumers' biometric data. *See*, *e.g.*, 740 ILCS 14/15(c)–(d). For instance, BIPA prohibits selling, leasing, trading, or otherwise profiting from a person's biometric data, (740 ILCS 14/15(c)), and requires that companies develop a publicly available written policy establishing a retention schedule and guidelines for permanently destroying biometric data when the initial purpose for collecting such data has been satisfied or within three years of the individual's last interaction with the company, whichever occurs first. It also requires companies to comply with the established retention schedule and destruction guidelines.  740 ILCS 14/15(a).

37.     Under BIPA, "[a] prevailing party may recover for each violation: (1) against a private entity that negligently violates a provision of this Act, liquidated damages of $1,000 or actual damages, whichever is greater; (2) against a private entity that intentionally or recklessly violates a provision of this Act, liquidated damages of $5,000 or actual damages, whichever is greater; (3) reasonable attorneys' fees and costs, including expert witness fees and other litigation expenses; and (4) other relief, including an injunction, as the State or federal court may deem appropriate." *Id.*

## GOOGLE VIOLATES THE PRIVACY OF ILLINOIS RESIDENTS

38.     Google Assistant Enabled Devices are designed to record and respond to communications immediately after an individual says a wake word (usually "Hey Google" or "Ok Google"). If the wake word is recognized, Google Assistant begins recording the voices and speech it hears.

39.     In order to field commands from a user, Google Assistant must always be "on." When activated by the relevant command, Google Assistant begins recording the voices and speech it hears. Google Assistant also reaches back and captures the three seconds of sound it heard before receiving the activation command. After collecting all this data, Google then stores these

1  recordings.[4]

2       40.     Unbeknownst to Plaintiff and Class members, Google uses those voice recordings

3  to generate, collect, and use voiceprints of its users (and non-users).

4       41.     Once Google analyzes and creates a voiceprint on its servers, it transfers and stores

5  it locally on the users' device. Each time a Google Assistant Enabled Device is triggered, Google

6  intercepts and transmits the voiceprint to its own servers to try to identify the speaker.

7       42.     Google's patents confirm the same. Patent U.S. Patent No. 10,438,584. explains

8  that Google's Virtual Assistant is capable of "identifying, based on the audio data, a user that

9  provided the spoken utterance."[5]

10      43.     Even worse, when Google Assistant records and analyzes the detected voices,

11 Google Assistant does not differentiate between owner-users, non-owner users, and non-users.

12 Google Assistant records *every voice it detects and creates voiceprints for each individual the*

13 *device hears.*

14      44.     Google uses this data for its own purposes, including to improve its artificial

15 intelligence.[6]  Given that Google has voice assistance for Google Search, Google Assistant, and

16 Google Maps, among other products, the collection and analysis of troves of voice data and human-

17 speech patterns provide a powerful means for Google to enhance its product offerings and

18 capabilities, which ultimately translates into market dominance and increased profits.

19      45.     Further, Google does not destroy the biometric identifiers it captures through

20 Google Assistant. In many instances, users must manually delete recordings of their own voices,

21 assuming a user even knows Google has stored such recordings.[7]

---

22
23 [4] *See e.g.*, Michael Timmermann, *Google is Recording Your Voice: How to Listen to (and Delete) the Files*, CLARK.COM (Oct. 26, 2017), https://clark.com/technology/google-recording-you-delete-files/.

24 [5] U.S. Patent No. 10,438,584.
   [6] *Manage Audio Recordings in Your Web & App Activity*, Google Account Help,
25 https://support.google.com/accounts/answer/6030020?hl=en&co=GENIE.Platform%3DDesktop#z
   ippy=%2Cdeleterecordings-from-your-web-app-activity (last visited Oct. 21, 2022) ("Your voice and
26 audio can help Google develop and improve its audio recognition technologies and the Google services that
   use them.").
27 [7] *Delete Your Activity*, Google Account Help, https://support.google.com/accounts/answer/465 (last visited
   Oct. 21, 2022).

28

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL
CASE NO. _____

46.     At no point in time did Google disclose or obtain consent to collect, analyze, and transfer Plaintiff and Class members' voiceprints. Indeed, while Google represents that Google Assistant can "recognize" voices, it never admitted or disclosed that this process actually involves the collection, use, and transfer of highly sensitive biometric information.

47.     Accordingly, Google failed to notify Illinois users that it is generating, collecting, using, transferring, and storing their biometric information and biometric identifiers.

48.     Google's practice of collecting, using, transferring, and storing voiceprints violates the Illinois BIPA 740 ILCS 14/1, *et seq*., which prohibits the collection, retention, capture, or purchase of biometric identifiers or biometric information without a written release from the individual. BIPA also requires a private entity in possession of biometric identifiers or biometric information to develop a retention schedule and guidelines setting forth the purpose of collecting biometric information and identifying a date upon which the biometric data will be destroyed.  740 ILCS 14/15(a).

49.     Google violates BIPA in multiple ways including, but not limited to:

a.     Google generates, collects, stores, transfers, and utilizes the voiceprints of individuals who speak to a Google Assistant Enabled Device and transcripts thereof without receiving executed written releases from enabled products.

b.     Google does not have a written policy available on its website "establishing a retention schedule and guidelines for permanently destroying biometric data when the initial purpose for collecting such data has been satisfied, or within 3 years of the individual's last interaction with the private entity, whichever occurs first."

50.     Under BIPA, no private entity may collect, capture, purchase, receive through trade, or otherwise obtain a person's or a customer's biometric identifier or biometric information, unless it first:

a.     informs the subject or the subject's legally authorized representative in writing that a biometric identifier or biometric information is being collected or stored;

b.     informs the subject or the subject's legally authorized representative in writing of the specific purpose and length of term for which a biometric identifier or biometric information is being collected, stored, and used; *and*

c.     receives a written release executed by the subject of the biometric identifier or

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL
CASE NO. _____

biometric information or the subject's legally authorized representative.

740CS 14/15(b) (emphasis added).

51.     BIPA claims brought under sections 740 ILCS 14/15 (a), (b), and (e) are subject to a five-year statute of limitations period, thus, Plaintiff's claims are not time-barred. *Tims v. Black Horse Carriers, Inc.*, No. 1-20-0563, 2021 Il. App. (1st) 200563, 2021 WL 4243310 (Sept. 17, 2021).

## CLASS ACTION ALLEGATIONS

52.     Plaintiff brings this action pursuant to Federal Rule of Civil Procedure 23(b)(3) individually and on behalf of the following Classes of Persons:

**Nationwide Class**: All US citizens who had their voiceprints collected by Google.

**Illinois Class:** All US citizens who live in Illinois and who, from the date five years prior to the date of the filing of this action to the date of the Class's certification of this action had their voiceprints collected by Google.

53.     Excluded from the Classes are Defendant and its subsidiaries and affiliates; all employees of Defendant and its subsidiaries and affiliates; all persons who make a timely election to be excluded from the Nationwide Class; Plaintiff's counsel and Defendant's counsel and members of their immediate families; government entities; and any judge to whom this case is assigned, including his/her immediate family and court staff.

54.     Certification of Plaintiffs' claims for class-wide treatment are appropriate because all elements of Fed. R. Civ. P. 23(a) and (b)(2)-(3) are satisfied. Plaintiffs can prove the elements of their claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims.

55.     **Numerosity:** All requirements of Fed. R. Civ. P. 23(a)(1) are satisfied. The members of the Classes are so numerous and geographically dispersed that individual joinder of all Class members is impracticable. While Plaintiff is informed and believes that there are likely tens of thousands, if not millions, of members of the Classes, the precise number of Class members is unknown to Plaintiff. Class members may be identified through objective means, including Defendant's own records. Class members may be notified of the pendency of this action by

recognized, court-approved notice dissemination methods, which may include U.S. mail, electronic mail, internet postings, and/or published notice.

56.     **Commonality and Predominance:** All requirements of Fed. R. Civ. P. 23(a)(2) and 23(b)(3) are satisfied. This action involves common questions of law and fact, which predominate over any questions affecting individual Class members, including, without limitation:

a.  Whether Google collected, captured, received, or otherwise obtained Plaintiff and the Classes biometric identifiers;

b.  Whether Google properly informed Plaintiff and the Classes that it collected, used, and stored their biometric identifiers;

c.  Whether Google properly informed Plaintiff and the Classes of the specific purposes for which it collected, used, and stored their biometric identifiers;

d.  Whether Google obtained a written release (as defined in 740 ILCS 14/10) from Plaintiff and the Illinois Class to collect, capture, or otherwise obtain their biometric identifiers;

e.  Whether Google has sold, leased, traded, or otherwise profited from Plaintiff's and the Class members' biometric identifiers;

f.  Whether Google had and made available to the public, a written policy establishing a retention schedule and guidelines for permanently destroying biometric identifiers in compliance with the BIPA; and

g.  Whether Google's violations of BIPA were committed intentionally, recklessly, or negligently.

57.     **Typicality:** All requirements of Fed. R. Civ. P. 23(a)(3) are satisfied. Plaintiff is a member of the Classes. Plaintiff's claims are typical of the claims of all Class members because Plaintiff, like other Class members, had his biometric identifiers collected, analyzed, transferred, stored, and otherwise used by Defendant without their consent.

58.     **Adequacy of Representation:** All requirements of Fed. R. Civ. P. 23(a)(4) are satisfied. Plaintiff is an adequate Class representative because he is a member of the Classes and his interest do not conflict with the interests of other Class members that he seeks to represent. Plaintiff

is committed to pursuing this matter for the Classes with the Classes collective best interest in mind. Plaintiff has retained counsel competent and experienced in complex class action litigation of this type and Plaintiff intends to prosecute this action vigorously. Plaintiff, and his counsel, will fairly and adequately protect the Classes interests.

59.     **Predominance and Superiority:** All requirements of Fed. R. Civ. P. 23(b)(3) are satisfied. As described above, common issues of law or fact predominate over individual issues. Resolution of those common issues in Plaintiff's case will also resolve them for the Classes claims. In addition, a class action is superior to any other available means for the fair and efficient adjudication of this controversy and no unusual difficulties are likely to be encountered in the management of this class action. The damages or other financial detriment suffered by Plaintiff and other Class members are relatively small compared to the burden and expense that would be required to individually litigate their claims against Defendant, so it would be impracticable for members of the Classes to individually seek redress for Defendant's wrongful conduct. Even if Class members could afford individual litigation, the court system could not. Individualized litigation creates a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

60.     **Cohesiveness:** All requirements of Fed. R. Civ. P. 23(b)(2) are satisfied. Defendant has acted, or refused to act, on grounds generally applicable to the Classes such that final declaratory or injunctive relief appropriate.

61.     Plaintiff reserves the right to revise the foregoing class allegations and definitions based on facts learned and legal developments following additional investigation, discovery, or otherwise.

## **TOLLING, CONCEALMENT, AND ESTOPPEL**

62.     The applicable statutes of limitation have been tolled as a result of Google's knowing and active concealment and denial of the facts alleged herein, namely its practice of

1  recording, collecting, using, and permanently storing individuals' voiceprint without their consent

2  and written release.

3     63.    Plaintiff and Class Members could not, with due diligence, have discovered the full

4  scope of Google's conduct, due in no small part to Google's efforts to conceal such conduct. All

5  applicable statutes of limitation also have been tolled by operation of the discovery rule. Under the

6  circumstances, Google was under a duty to disclose the nature, significance, and purpose of its

7  practice of recording, collecting, using, and permanently storing Plaintiff's and Class members'

8  voiceprints, but did not do so. Defendant is therefore estopped from relying on any statute of

9  limitations.

10    64.    Google's fraudulent concealment and omissions are common to Plaintiffs and all

11  Class members.

12    65.    Illinois' BIPA provides a private right of action such that any "person aggrieved by

13  a violation of this Act shall have a right of action in a State circuit court or as a supplemental claim

14  in a federal district court against an offending party." 740 ILCS 14/20.

**CLAIMS FOR RELIEF**
**FIRST CLAIM FOR RELIEF**
**Violation of 740 ILCS 14/15(b)**
**(On Behalf of the Plaintiff and the Illinois Class)**

18    66.    Plaintiff re-alleges and incorporates the preceding allegations of this Complaint

19  with the same force and effect as if fully restated herein.

20    67.    The Illinois Legislature instituted BIPA on a finding that the "full ramifications of

21  biometric technology are not fully known" and that "[t]he public welfare, security, and safety will

22  be served by regulating the collection, use, safeguarding, handling, storage, retention, and

23  destruction of biometric identifiers and information." 740 ILCS 14/5.

24    68.    BIPA makes it unlawful for any private entity to, among other things, "collect,

25  capture, purchase, receive, receive through trade, or otherwise obtain a person's or a customer's

26  biometric identifier . . . unless it first: (1) informs the subject . . . in writing that a biometric identifier

27  . . . is being collected or stored; (2) informs the subject . . . in writing of the specific purpose and

28

length of term for which a biometric identifier . . . is being collected, stored, and used; and (3) receives a written release executed by the subject of the biometric identifier." 740 ILCS 14/15(b).

69.     Defendant is a Delaware corporation and thus qualifies as a "private entity" under BIPA. *See* 740 ILCS 14/10.

70.     Plaintiff and the Class's voiceprints are "biometric identifiers" pursuant to 740 ILCS 14/10.

71.     Google systematically and automatically collected, used, analyzed, transferred and stored Plaintiff's and the Class's biometric identifiers without first obtaining the specific written release required by 740 ILCS 14/15(b)(3).

72.     Google did not properly inform Plaintiff or the Class members in writing that their biometric identifiers or biometric information were being collected and stored, nor did it inform them in writing of the specific purpose and length of term for which their biometric identifiers or biometric information were being collected, stored, and used as required by 740 ILCS 14/15(b)(1)-(2).

73.     By collecting, storing, transferring and using Plaintiff's and the Class members' biometric identifiers or biometric information as described herein, Google violated Plaintiff's and the Class members' rights to privacy in their biometric identifiers as set forth in BIPA, 740 ILCS 14/1, *et seq*.

74.     On behalf of himself and the Illinois Class, Plaintiff seeks: (i) injunctive and equitable relief as necessary to protect the interests of Plaintiff and the Class by requiring Google to comply with the BIPA's requirements for the collection, storage, and use of biometric identifiers or biometric information; (ii) statutory damages of $5,000.00 per intentional or reckless violation of BIPA pursuant to 740 ILCS 14/20(2) and statutory damages of $1,000.00 per negligent violation of BIPA pursuant to 740 ILCS 14/20(1); and (iii) reasonable attorney's fees and costs and other litigation expenses pursuant to 740 ILCS 14/20(3).

**SECOND CLAIM FOR RELIEF**
**Violation of 740 ILCS 14/15(a)**
**(On Behalf of the Plaintiff and the Illinois Class)**

75.     Plaintiff re-alleges and incorporates the preceding allegations of this Complaint with the same force and effect as if fully restated herein.

76.     Section 15(a) of BIPA requires that any "private entity in possession of biometric identifiers . . . must develop a written policy, made available to the public, establishing a retention schedule and guidelines for permanently destroying biometric identifiers . . . when the initial purpose for collecting or obtaining such identifiers . . . has been satisfied or within 3 years of the individual's last interaction with the private entity, whichever occurs first." 740 ILCS 14/15(a).

77.     Google does not publicly provide a retention schedule or guidelines for permanently destroying their biometric identifiers or biometric information as specified by BIPA. *See* 740 ICLS 14/15(a).

78.     Google did not adequately disclose to Plaintiff and Class members that it would collect, store, transfer and use their voiceprints.

79.     Accordingly, on behalf of himself and the Illinois Class, Plaintiff seeks: (i) injunctive and equitable relief as necessary to protect the interests of Plaintiff and the Class by requiring Google to establish and make publicly available a policy for the permanent destruction of biometric identifiers complaint with 740 ILCS 14/15(a); (ii) statutory damages of $5,000.00 per intentional or reckless violation of BIPA pursuant to 740 ILCS 14/20(2) and statutory damages of $1,000.00 per negligent violation of BIPA pursuant to 740 ILCS 14/20(1); and (iii) reasonable attorneys' fees and costs and other litigation expenses pursuant to 740 ILCS 14/20(3).

**THIRD CLAIM FOR RELIEF**
**Violation of 740 ILCS 14/15(c)**
**(On Behalf of Plaintiff and the Illinois Class)**

80.     Plaintiff re-alleges and incorporates the preceding allegations of this Complaint with the same force and effect as if fully restated herein.

81.     BIPA states that no private entity "in possession of a biometric identifier or biometric information or biometric information may sell, lease, trade, or otherwise profit from a person's or a

15

1  customer's biometric identifier or biometric information." 740 ILCS 14/15(c).

2  82.  Google, as alleged above, utilizes voice data to identify an individual and populate

3  user-specific customized content, including advertisements from which Google has been profiting from.

4  83.  Upon information and belief, Google likely sells, leases, trades, or otherwise profits

5  from the voice data, which violates 740 ILCS 14/15(c).

6  84.  Accordingly, on behalf of himself and the Illinois Class, Plaintiff seeks: (i) injunctive

7  and equitable relief as necessary to protect the interests of Plaintiff and the Class by requiring Google

8  to establish and make publicly available a policy for the permanent destruction of biometric

9  identifiers complaint with 740 ILCS 14/15(a); (ii) statutory damages of $5,000.00 per intentional or

10  reckless violation of BIPA pursuant to 740 ILCS 14/20(2) and statutory damages of $1,000.00 per

11  negligent violation of BIPA pursuant to 740 ILCS 14/20(1); and (iii) reasonable attorneys' fees and

12  costs and other litigation expenses pursuant to 740 ILCS 14/20(3).

**FOURTH CLAIM FOR RELIEF**
**Common Law Invasion of Privacy – Intrusion Upon Seclusion**
**(On Behalf of Plaintiff and the Nationwide Class)**

15  85.  Plaintiff re-alleges and incorporates the preceding allegations of this Class Action

16  Complaint with the same force and effect as if fully restated herein.

17  86.  Plaintiffs asserting claims for intrusion upon seclusion must plead (1) that the

18  Defendant intentionally intruded into a matter as to which plaintiffs have a reasonable expectation

19  of privacy; and (2) that the intrusion was highly offensive to a reasonable person.

20  87.  Google intruded upon Plaintiff's and Class members' seclusion by (1) surreptitiously

21  collecting, storing, transferring, and otherwise using their voiceprints in which they had a reasonable

22  expectation of privacy; and (2) in a manner that was highly offensive to Plaintiff and Class members,

23  would be highly offensive to a reasonable person, and was an egregious violation of social norms.

24  88.  Google violated Plaintiff's and Class members' privacy interests by collecting,

25  storing, transferring and using Plaintiff's and Class members' sensitive and confidential biometric

26  information without consent.

27  89.  Google's surreptitious collection, storage, transfer, and use of Plaintiff's and Class

members' biometric information was highly offensive because it violated expectations of privacy established by general social norms.

90.     Google intentionally engaged in the misconduct alleged herein for its own financial benefit.

91.     As a result of Google's actions, Plaintiff and Class members have suffered harm and injury, including but not limited to the invasion of their privacy rights.

92.     Unwanted collection and use of sensitive biometric information in violation of the law or social norms is actionable under California law.

93.     Plaintiff and Class members have been damaged as a direct and proximate result of Google's invasion of their privacy and are entitled to just compensation.

94.     Plaintiff and Class members are entitled to appropriate relief, including compensatory damages for the harm to their privacy and dignitary interests, loss of valuable rights and protections, heightened risk of future invasions of privacy, and mental and emotional distress.

95.     Plaintiff and Class members are entitled to an order requiring Google to disgorge profits or other benefits that Google acquired as a result of its invasions of privacy.

96.     Plaintiff and Class members are entitled to punitive damages resulting from the malicious, willful and intentional nature of Google's actions, directed at injuring Plaintiff and Class members in conscious disregard of their rights. Such damages are needed to deter Google from engaging in such conduct in the future.

97.     Plaintiff also seeks such other relief as the Court may deem just and proper.

**FIFTH CLAIM FOR RELIEF**
**Invasion of Privacy**
**Art. I, Sec. 1 of the California Constitution**
**(On Behalf of Plaintiff and the Nationwide Class)**

98.     Plaintiff re-alleges and incorporates the preceding allegations of this Class Action Complaint with the same force and effect as if fully restated herein.

99.     Art. I, § 1 of the California Constitution provides: "All people are by nature free and independent and have inalienable rights. Among these are enjoying and defending life and liberty,

1  acquiring, possessing, and protecting property, and pursuing and obtaining safety, happiness, and

2  privacy."

3       100.   The right to privacy in California's Constitution creates a private right of action

4  against private and government entities.

5       101.   To state a claim for invasion of privacy under the California Constitution, a pPlaintiff

6  must establish (1) a legally protected privacy interest; (2) a reasonable expectation of privacy; and

7  (3) an intrusion so serious in nature, scope, and actual or potential impact as to constitute an

8  egregious breach of the social norms.

9       102.   Google violated Plaintiff's and Class members' constitutional right to privacy by (1)

10  surreptitiously collecting, storing, transferring, and otherwise using their voiceprints in which they

11  had a reasonable expectation of privacy; and (2) in a manner that was highly offensive to Plaintiff

12  and Class members, would be highly offensive to a reasonable person, and was an egregious

13  violation of social norms.

14       103.   Google has intruded upon Plaintiff's and Class members' legally protected privacy

15  interests, including, *inter alia*: interests in precluding the dissemination or misuse of sensitive

16  confidential biometric information, e.g., voiceprints ("informational privacy").

17       104.   The confidential and sensitive biometric information, which Google collected,

18  stored, transferred, and otherwise used without Plaintiff's and Class members' authorization and/or

19  consent included their unique voiceprints. Plaintiff and Class members had a legally protected

20  informational privacy interest in the confidential and sensitive biometric information.

21       105.   Google's actions constituted a serious invasion of privacy that would be highly

22  offensive to a reasonable person in that: (i) the invasion occurred within a zone of privacy protected

23  by the California Constitution, namely the collection and storage of Plaintiff's and Class members'

24  sensitive and confidential biometric information without consent, and the misuse of information

25  gathered for an improper purpose; (ii) the invasion deprived Plaintiff and Class members of the

26  ability to control the circulation of their sensitive and confidential biometric information, which is

27  considered fundamental to the right to privacy.

28

106.    Plaintiff and Class members had a reasonable expectation of privacy in that: (i) Google's invasion of privacy occurred as a result of Google surreptitiously collecting, storing, transferring, and otherwise using their sensitive and confidential biometric information; (ii) Plaintiff and Class members did not consent or otherwise authorize Google to collect, store, transfer, or otherwise use their sensitive and confidential biometric information; (iii) Google did not inform Plaintiff or Class members that it would collect their biometric information, e.g., voiceprints; and (iv) Plaintiff and Class members could not reasonably expect Google would commit acts in violation of laws of protective privacy.

107.    As a result of Google's actions, Plaintiff and Class members have been damaged as a direct and proximate result of Google's invasion of their privacy and are entitled to just compensation.

108.    Plaintiff and Class members seek appropriate relief for that injury, including but not limited to damages that will reasonably compensate Plaintiff and Class members for the harm to their privacy interests as well as disgorgement of profits made by Google as a result of its intrusions upon Plaintiff's and Class members' privacy.

## SIXTH CLAIM FOR RELIEF
### Unjust Enrichment
### (On Behalf of Plaintiffs and the Nationwide Class)

109.    Plaintiff re-alleges and incorporates the preceding allegations of this Class Action Complaint with the same force and effect as if fully restated herein.

110.    Google received benefits from Plaintiff and Class members and unjustly retained those benefits at their expense.

111.    Google received benefits from Plaintiff and Class members in the form of the sensitive biometric information that Google collected from Plaintiff and Class members without authorization and proper compensation. Google collected, stored, transferred, and analyzed this data for its own gain, providing Google with economic, intangible, and other benefits, including an unfair economic advantage over its competitors.

112.    Google unjustly retained those benefits at the expense of Plaintiff and Class members

because Google's conduct damaged Plaintiff and Class members, all without providing any commensurate compensation to Plaintiff and Class members.

113.    The benefits that Google derived from Plaintiff and Class members rightly belong to Plaintiff and Class members. It would be inequitable under unjust enrichment principles in California and every other state for Google to be permitted to retain any of the profit or other benefits it derived from the unfair and unconscionable methods, acts, and trade practices alleged in this Class Action Complaint.

114.    Google should be compelled to disgorge in a common fund for the benefit of Plaintiff and Class members all unlawful or inequitable proceeds it received, and such other relief as the Court may deem just and proper.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of himself and the proposed Classes, respectfully request that the Court enter an order:

a.    Certifying this case as a Class action on behalf of the Classes defined above, appointing Plaintiff as the representative of the Classes, and appointing Plaintiff's counsel as the Class counsel;

b.    Declaring that Google's conduct, as set out above, violates the laws cited herein;

c.    Ordering Google to delete all voiceprints of Class members, and to implement procedures to require consent before recording or storing protected communications;

d.    Awarding damages, including nominal, statutory, and punitive damages where applicable, to Plaintiff and the Classes in an amount to be determined at trial;

e.    Awarding Plaintiff and the Classes their reasonable litigation expenses and attorneys' fees;

f.    Awarding Plaintiff and the Classes pre-and post-judgment interest, to the extent allowable;

g.    Awarding such other further injunctive and declaratory relief as is necessary to protect the interests of Plaintiff and the Classes; and

h.    Awarding such other and further relief as the Court deems reasonable and just.

## **DEMAND FOR JURY TRIAL**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a jury trial as to all issues triable by a jury.

Dated: October 21, 2022

*/s/ Christian Levis*
Christian Levis (*pro hac vice* forthcoming)
Amanda Fiorilla (*pro hac vice* forthcoming)
Rachel Kesten (*pro hac vice* forthcoming)
**LOWEY DANNENBERG, P.C.**
44 South Broadway, Suite 1100
White Plains, NY 10601
Telephone: (914) 997-0500
Facsimile: (914) 997-0035
clevis@lowey.com
afiorilla@lowey.com
rkesten@lowey.com

Mark N. Todzo (Bar No. 168389)
Eric S. Somers (Bar No. 139050)
**LEXINGTON LAW GROUP**
503 Divisadero Street
San Francisco, CA 94117
Telephone: 415-913-7800
mtodzo@lexlawgroup.com
esomers@lexlawgroup.com

*Attorneys for Plaintiff and the Proposed Class*